AMY, Judge.
The plaintiffs sued the State of Louisiana Department of Transportation and Development for negligence and strict liability for failing to maintain the right-of-way along Louisiana Highway 127. A jury trial was held, and no fault was apportioned to the State. The plaintiffs appeal this decision. For the following reasons, we affirm.
Factual and Procedural Background
On October 30, 1991, Jerry Norris was involved in an accident with Beatrice Shirley. Ms. Shirley was entering Highway 127 from the Walkerville Road by making a left-hand turn. According to the accident report, Mr. Norris was northbound on Highway 127 when Ms. Shirley emerged from the Walkerville Road into his lane of travel. Mr. Norris testified that he applied his brakes, but was unable to avoid an accident with Ms. Shirley. Mr. Norris testified that when he got out of his car, at the accident scene, that Ms. Shirley stated that she was sorry and that she failed to see him. The police report also corroborates this account. According to the police report and the testimony from trial, Ms. Shirley was the only individual issued a citation for the accident.
After the accident, Mr. Norris began having back trouble which resulted in sur *1199 gery in 1998.[1] Mr. Norris worked until 1998, when he could no longer tolerate the back pain. According to Dr. John Jackson, this has left Mr. Norris partially disabled.
Mr. Norris sued the State of Louisiana Department of Transportation and Development (DOTD) for strict liability and negligence.[2] Specifically, Mr. Norris | ^argued that the DOTD failed to properly maintain the right-of-way along Highway 127, so as to keep the vegetation from obstructing the view of the drivers. A jury verdict was rendered on August 10, 2000 in favor of DOTD. Subsequently, the plaintiffs filed a motion for new trial arguing that three jurors had come forward claiming that they misunderstood the jury instructions and were improperly influenced by other jurors. The trial court denied the motion for new trial.
The plaintiffs now appeal arguing that the trial court erred in falling to grant the motion for new trial and/or the motion fora judgment notwithstanding the verdict[3] in light of the DOTD’s negligence in maintaining the pine sapling thicket along this area of Highway 127. We affirm the trial court’s decision.
Discussion
The plaintiffs argue that the trial court erred in denying his motion for new trial. When considering a motion for new trial, La.Code Civ.P. art. 1972 provides that:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
|,sWhen reviewing the denial of a motion for new trial, unless an abuse of discretion can be exhibited, the trial court’s decision will not be reversed. Davis v. Coregis Ins. Co., 00-00475 (La.App. 3 Cir. 12/27/00); 789 So.2d 7, writ denied, 01-0292 (La.3/30/01); 788 So.2d 1192.
The plaintiffs filed suit against the DOTD alleging negligence and strict liability. La.Civ.Code art. 2316 provides that “[ejvery person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.” La.Civ.Code art. 2317 addresses strict liability and states, “[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody... ,”[4] Regardless
*1200 of whether the plaintiff pursues the DOTD under a theory of strict liability or negligence, the plaintiff bears the burden of exhibiting:
|4(1) DOTD had custody of the thing that caused the plaintiffs injuries or damages;
(2) the thing was defective because it had a condition that created an unreasonable risk of harm;
(3) DOTD had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time; and
(4) the defect in the thing was a cause-in-fact of the plaintiffs injuries.
Netecke v. State ex rel. DOTD, 98-1182, 99-1197, p. 7 (La.10/19/99); 747 So.2d 489, 494. See also Roy v. Augustine, 01-1021 (La.App. 3 Cir. 12/12/01); 801 So.2d 1249. Accordingly, in the present case, the jury determined that the DOTD was not negligent or strictly hable.
The plaintiffs filed a motion for new trial on September 18, 2000. The plaintiffs’ first contention was that the verdict and judgment “appears contrary to the law and the evidence.” In the motion, the plaintiffs also cited jury confusion and misleading statements made by the State’s attorney in the State’s original petition on July 27, 1992.
In his reasons for denying the plaintiffs’ motion for new trial, the trial judge stated:
The motion for new trial is denied. First, the plaintiff has presented only 3 affidavits, assuming they were admissible, only nine jurors were required to sustain a verdict. Second, the allegations in the affidavits fall short of being significant enough to require a new trial. No contemporaneous complaints were made by the jurors; they asked for no clarifying instructions; and when polled, they agreed that the verdict was theirs without hesitation or equivocation.
As stated above, in order to have grounds for a new trial, one of three criteria must be met. Because the plaintiffs make reference to two of the three criteria listed in La.Code Civ.P. art. 1972, namely the verdict or judgment appears clearly contrary | Kto the law and the evidence and jury misconduct, our analysis will focus on these two areas.
First, plaintiffs allege that the verdict was clearly contrary to the law and the evidence. However, the jury was presented with expert and fact witnesses testifying for both sides. “Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in testimony.” *1201 Stobarb v. State through Dept. of Tramp, and Development, 617 So.2d 880, 882 (La.1993).
The jury heard expert testimony from Dr. John Mounce, who testified for the defense, and Mr. Steve Templin, who testified on behalf of the plaintiff. Dr. Mounce, who is a licensed engineer specializing in human factors, made certain determinations. First, Dr. Mounce concluded that the stop sign at Walkerville Road met the published guidelines administered by the American Association of State Highway and Transportation Officials (AASHTO).. Next, Dr. Mounce testified that the sight distance at the intersection was in excess of 600 feet which exceeds the AASHTO Design Manual minimum requirement of 360 feet. Additionally, Dr. Mounce testified that there were proper warning signs for changes in the road alignment. Dr. Mounce also testified that the AASHTO requires a ten-foot clear zone along highways and in his opinion the shoulders and clear zone were properly maintained.
The plaintiffs introduced Mr. Steve Templin, a forestry expert. Mr. Templin testified as to the size of the saplings present within the right of way and the length of time it would take the saplings to reach the respective sizes. However, Mr. | fiTemplin did not offer testimony with regards as to whether Highway 127 was within state regulatory guidelines. Apart from Mr. Templin, the plaintiff did not introduce any other expert that could testify as to state highway regulations.
The jury also heard Ms. Shirley testify as follows:
Q Okay. Now, tell me what you did when you got to that intersection of Walkerville Road and Highway 127.
A I came to the end of the road and stopped. I looked to the left. I didn’t see anybody. I looked to the right and I saw nothing. I started to pull out and then I saw Mr. Jerry Norris. And he was in the curve of the road. And he was coming fast. And I was pulling out. And he hit me.
Q Was anything blocking your view from seeing Mr. Nugent (sic)?
A No sir.
Q Okay. Was there anything blocking you from seeing him?
A No.
Q Like pine trees or anything?
A No.
Q You saw him?
A I saw him.
Ms. Shirley is the only individual who can testify as to what she did and did not see or was able to see on October 30, 1991.
Several exhibits were entered into evidence, which included various pictures of the intersection in question and the DOTD maintenance records for the area of 17Highway 127 that pertains to the present litigation. The jury was allowed to review the exhibits and make determinations.
Accordingly, the jury was presented with evidence that rebutted the plaintiffs’ argument. Thus, the jury’s decision is not contrary to the law and the evidence.
Next, the plaintiffs’ argue that there is evidence that the jury was confused as to the jury instructions and that some jurors may have been improperly influenced. The plaintiffs obtained affidavits from three of the twelve jurors which explained that they were confused by the jury instructions, unclear about the plaintiffs’ burden of proof, and relate that the evidence as requested by the jury for deliberation was incomplete. However, a new trial is “mandated only on a showing that the jury misconduct was of such a grievous *1202 nature as to preclude the impartial administration of justice.” Detillier v. Smith, 94-34, p. 4 (La.App. 5 Cir. 5/31/94); 638 So.2d 445, 447, writ denied, 94-1762 (La.10/7/94); 644 So.2d 645. See also Gormley v. Grand Lodge, 503 So.2d 181 (La.App. 4 Cir.), writ denied, 506 So.2d 1227 (La.1987).
In the present case, the plaintiffs have not submitted any evidence of specific improper behavior during jury deliberations. There has been nothing to show that impartial justice has not been delivered. According to the record, it appears that the only question submitted by the jury once deliberations began concerned the possibility of polling the jury. Additionally, the plaintiffs did not make any objections to the jury instructions concerning the applicable burden of proof.
The issue for the reviewing court to resolve is not whether the fact finder’s decision is right or wrong, but whether the fact finder’s conclusion is reasonable. Sto-bart, 617 So.2d 880. Therefore, we do not find that the trial court abused its discretion in denying the motion for new trial.
I «DECREE
For the above reasons, we affirm the decision of the trial court. All costs of this appeal are assigned to the plaintiffs, Jerry Norris, et al.
AFFIRMED.

. Mr. Norris had back surgery in 1986, but had successfully recovered at the time of the October 1991 accident.

. Mr. Norris’s wife, Lisa Norris, was also a plaintiff suing the DOTD for loss of love and affection from her husband as a result of the accident.

. In their brief, the plaintiffs refer to a motion for new trial and/or judgment notwithstanding the verdict. However, the record reveals that the plaintiffs filed a "Motion and Order for New Trial.” The trial court denied the motion for new trial. Despite the plaintiffs’ reference to an alternative motion for judgment notwithstanding the verdict, we review the trial court’s denial of the motion for new trial.

.La.R.S. 9:2800, which provides for limitation of liability for public bodies, states:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
*1200 B. Except as provided for in Subsection A of this Section, no person shall have cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
D. A violation of the rales and regulations promulgated by a public entity is not negligence per se.
E. "Public entity” means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions....